IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

BLAKE WEBER,                          )
                                      )
        Plaintiff/Appellant,          ) Shelby Chancery No. 103274-3
R.D.                                  
                                      )
VS.                                   ) Appeal No. 02A01-9407-CH-00173
                                      )
                                      )
JACK MOSES, Individually and          )
JEFFERSON PILOT LIFE INS. CO.,        )
                                      )
        Defendants/Appellees.         )

FILED

January 17, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE D.J. ALISSANDRATOS, CHANCELLOR

GAIL O. MATHES
Memphis, Tennessee
Attorney for Plaintiff/Appellant

RICHARD H. ALLEN, JR.
ALLEN, SCRUGGS, SOSSAMAN
& THOMPSON, P.C.
Memphis, Tennessee
Attorney for Defendants/Appellees

AFFIRMED

ALAN E. HIGHERS, JUDGE

HEWITT P. TOMLIN, JR., SR. J. (Concurs)

W. FRANK CRAWFORD, P.J., W.S. (Dissents - see separate dissenting opinion)

Plaintiff-Appellant Blake Weber brought suit against the Defendants-Appellees, Jack Moses and Jefferson Pilot Life Insurance Company ("Jefferson Pilot"), alleging that he was unlawfully discharged due to his refusal to participate in Appellee Jefferson Pilot's illegal employment practices. The chancellor dismissed Appellant's suit, stating that his cause of action was barred by the applicable one year statute of limitations. Weber appeals the lower court's dismissal of his Complaint.

At the hearing before the chancellor, the parties stipulated to the following facts. Appellant was verbally notified by Appellee Jack Moses on August 5, 1992, that Appellant's sales manager contract with Jefferson Pilot would be terminated at the end of August, 1992. Appellant thereafter requested in writing that Jefferson Pilot reconsider its decision to terminate him. Appellant's sales manager contract with Jefferson Pilot provided, in pertinent part: "this contract may be terminated on written notice by either party...." Appellant received written notification of his termination after August 31, 1992. Appellant filed the present suit for retaliatory discharge on August 31, 1993.

Appellant's Complaint asserts that Appellant was terminated

2

because he refused to comply with Jefferson Pilot's alleged company policy of not hiring or recommending for employment any black females. This allegation, if true, constitutes a violation of the Tennessee Human Rights Act ("Act"), T.C.A. § 4-21-401 (1991). Appellant seeks relief pursuant to § 4-21-301 (1991) of the Act, which states:

> It shall be a discriminatory practice for a person or for two (2) or more persons:
>> (1) to retaliate or discriminate in any manner against a person because he or she has opposed a practice declared discriminatory by this chapter.
>> . .

Appellant also asserts a claim for relief under the Public Protection Act, which provides:

> (a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about illegal activities.

> (b) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

T.C.A. §50-1-304 (1991).

The applicable statute of limitations for claims filed pursuant to the Act and for claims alleging the tort of retaliatory discharge is one year. See T.C.A. § 4-21-311 (1991 & Supp. 1994) and T.C.A. § 28-3-104 (1980 & Supp. 1994), respectively. Appellant alleges that his employment contract required written notification of termination in order for termination to be effective. Thus, Appellant claims that his termination was not unequivocal, and the statute of limitations did not begin to run, until he received written notice, which occurred some time after August

3

31, 1992.

Appellees argue, on the other hand, that Weber knew his employment was terminated on August 5, 1992. In support of their argument, Appellees cite to Weber's letter addressed to Pat Walden, Regional Vice President of Jefferson Pilot, dated August 5, 1992. The letter states, "I would like you to reconsider your decision to terminate my Sales Manager contract, because I feel that I have much to add to the Memphis Agency and Jefferson Pilot as a Sales Manager." The Appellees also claim that it is evident from Appellant's Complaint that Appellant knew the August 5, 1992 decision to terminate him was final. The Complaint alleges that, after Weber sent the letter to Mr. Walden, but before August 31, 1992, "Plaintiff again pressed Defendant Moses as to why the termination was occurring. Defendant Moses said, 'because of the whole situation.'" Based on these statements made by Appellant, Appellees conclude that the statute of limitations began to run no later than August 5, 1992.

We perceive the only issue before this Court to be whether, in a retaliatory discharge case, the statute of limitations accrual period begins to run when the employee is informed of his imminent termination, or when that termination actually occurs.

In Webster v. Tennessee Board of Regents, 902 S.W.2d 412 (Tenn. App. 1995), the middle section of this court considered the point at which the statute of limitations begins to run "when an employee is given notice

4

of his pending discharge (due to alleged discrimination based on race) but continues to perform non-gratuitous services until the final day of work pursuant to said notice." Id. at 414. The facts of Webster are markedly similar to the facts in the case at bar. In Webster, the plaintiff-employee, who served as the Director of Accounting and Finance at Tennessee State University from 1990 until his termination on September 3, 1991, alleged that he was discharged because of his African-American race. Id. at 413. Although the defendants notified plaintiff that his employment would be terminated on September 3, 1991, the defendants told plaintiff that his termination would not be effective until September 30, 1991. Id. The plaintiff filed his original complaint on September 28, 1992, over one year after plaintiff was notified of his impending termination, but less than one year after the effective date of termination. Id. Relying on the decision of the Supreme Court in Delaware State College v. Ricks, 449 U.S. 250, 258, the court found that the statute of limitations in an employment discrimination suit begins to run on the date that the alleged discrimination occurs; that is, the date the employee is notified of his impending termination. Id. at 414. Quoting from Ricks, the court stated:

> The only alleged discrimination occurred--and the filing limitations periods therefore commenced--at the time the tenure decision was made and communicated to [plaintiff]. . . .Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.

Id.

Although the discriminatory act Ricks involved a denial of tenure, rather than a termination of employment, the Supreme Court made clear

in <u>Chardon v. Fernandez</u>, 454 U.S. 6 (1981), that the rationale employed in <u>Ricks</u> was also applicable to cases involving termination of employment. In <u>Chardon</u>, the respondents were nontenured administrators in Puerto Rico's Department of Education. On June 18, 1977, each respondent was notified by letter that his appointment would terminate at a specific date between June 30 and August 8, 1977. No complaint was filed until June 19, 1978. In holding that the applicable one year statute of limitations barred the respondents' cause of action, the Court stated:

> In <u>Ricks</u>, we held that the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences of the act become painful*. 449 U.S., at 258. The fact of termination is not itself an illegal act. In <u>Ricks</u>, the alleged illegal act was racial discrimination in the tenure decision. <u>Id.</u>, at 259. Here, respondents allege that the decision to terminate was made solely for political reasons, violative of First Amendment rights. There were no other allegations, either in <u>Ricks</u> or in these cases, of illegal acts subsequent to the date on which the decisions to terminate were made. . . .In the cases at bar, respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments. The fact that they were afforded reasonable notice cannot extend the period within which suit must be filed.

The Appellant in the present case does not claim that he was discriminated against; rather, he asserts a cause of action for retaliatory discharge. It is well settled that an employer in Tennessee may terminate the employment relationship with or without good cause. <u>Payne v. The Western & A. Railroad</u>, 81 Tenn. 507, 517 (1884). However, our courts have recognized exceptions to the employment at will doctrine. In <u>Clanton v. Cain-Sloan Co.</u>, 677 S.W.2d 441 (Tenn. 1984), the Tennessee Supreme Court first recognized a cause of action for

retaliatory discharge in order to prevent employers from circumventing their obligations under the workers' compensation laws. Since <u>Clanton</u> was decided, tort actions for retaliatory discharge have been expanded to include a variety of situations where an employer's actions clearly violate statutory policy. <u>See generally</u> <u>Anderson v. Standard Register Co.</u>, 857 S.W. 2d 555, 556 (Tenn. 1993). Specifically, the <u>Anderson</u> court recognized that "an employer cannot discharge employees. . .because they refuse to participate in or be silent about illegal activity at the work place. (T.C.A. § 50-1-304 (1991))." <u>Id.</u> at 556. In <u>Reynolds v. Ozark Motor Lines, Inc.</u>, 887 S.W. 2d 822 (Tenn. 1994), the court found the following to be elements of a cause of action for retaliatory discharge: "an employment at-will relationship; a clear declaration of public policy which imposes duties upon the employee or employer; and discharge of the employee for refusing to violate those duties." <u>Id.</u> at 825.

The elements of a retaliatory discharge claim are present in the case at bar. As this court stated in <u>Randolph v. Dominion Bank</u>, 826 S.W. 2d 477 (Tenn. App. 1991), "a contract for employment for an indefinite term is a contract at will. . ." Weber's employment contract, as revealed in the record, was for an indefinite period and permitted him to "be terminated on written notice by either party." The allegations of Appellant's Complaint, if true, constitute a violation of a clear statutory policy. <u>See</u> T.C.A. § 4-21-401, § 50-1-304. Finally, the Complaint alleges that Appellant was terminated for refusing to participate in the Appellees' discriminatory employment practices. The crux of this suit, however, is not whether there is a cause of action, but when the cause of action

accrued.

Although Webster involved allegations of employment discrimination, and the present case asserts a claim for retaliatory discharge, we find that the rationale utilized in Webster is equally applicable to the case at bar. Both Appellant and the plaintiff in Webster alleged wrongful discharge; the former on the basis of racial discrimination, the latter for retaliation in violation of clear state policy. As the Webster court stated, an employee who believes he is being terminated because of his race suffers the alleged discrimination on the date the discriminatory act occurs; that is, when the employee is informed of the impending termination. The employee's cause of action, for purposes of the statute of limitations, accrues on that day. Webster, 902 S.W.2d at 414. Similarly, in a suit alleging retaliatory discharge, the employee suffers the alleged retaliation on the date he is informed of the upcoming termination. The existence of an employment contract in the present case, requiring written notice of termination, does not affect our analysis. The parties stipulated that Appellant was verbally notified by Appellee Jack Moses on August 5, 1992, that Appellant's sales manager contract with Jefferson Pilot would be terminated on August 31, 1992. Regardless of the fact that Appellant did not receive written notice of his termination until after that date, the retaliatory act occurred when Appellee Moses informed Appellant of his impending termination.

For these reasons, we hold that Appellant's cause of action accrued no later than August 5, 1992; the date Appellant was told of the

8

impending termination, and not on August 31, the date Appellant's termination became effective.

Accordingly, we affirm the decision of the chancellor. Costs are taxed to the Appellant.

_____
_____

                                              _____
                                                         HIGHERS, J.

_____
TOMLIN, SR. J. (Concurs)

_____
CRAWFORD, P.J., W.S. (Dissents)
(See separate Dissenting Opinion)